**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| ARTHUR J. GALLAGHER & CO. and ASSUREDPARTNERS OF COLORADO, LLC, | |
| Plaintiffs, | |
| v. | Case No. 1:26-cv-00539-RMR-SBP |
| CINDY ACKERMAN JOHNSON, VICKI WILLING, AMANDA MACKIE, and HUB INTERNATIONAL LIMITED, | |
| Defendants. | |

**DEFENDANTS HUB INTERNATIONAL LIMITED, VICKI WILLING,
AND AMANDA MACKIE'S MOTION TO DISMISS COMPLAINT**

Defendants Vicki Willing, Amanda Mackie, and HUB International Limited ("HUB") (together, "Defendants") file this Motion to Dismiss Complaint, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6) and respectfully state in support as follows.

## I.    INTRODUCTION

Upset that a major insurance producer, Cindy Johnson, chose to switch jobs in January 2026 and is not subject to any restrictive covenants, Plaintiffs filed a baseless complaint against Ms. Johnson as well as her new employer and two of her support staff: HUB, Ms. Willing, and Ms. Mackie. To be blunt: Plaintiffs are not motivated by legal rights but by hope that they can backdoor restrictive covenant obligations where none exist.

Unsurprisingly, Plaintiffs' Complaint rests on conjecture and aggregation, not well-pleaded facts tied to each Defendant. (*See, e.g.,* Compl. ¶¶ 3, 5, 52, 53, 54, 56, 60, 62, 71, 72, 74, 85, 91, 106, 113, 117, 123, 126.) Plaintiffs ask the Court to infer misappropriation and breach, while conceding it is only "likely" that misconduct might have occurred and that they "will not know the full contents" until after discovery. (*Id.* ¶¶ 5, 52, 117, 126.) Yet the exhibits attached to the Complaint show client assent and client-initiated communications. (*Id.* Exs. C–F.) The exhibits show no prohibited solicitation or servicing by Ms. Willing or Ms. Mackie and no HUB-directed inducement or participation.

Plaintiffs' claims fail. Among other reasons: The trade secret claims fail for lack of specificity and plausibility. The contract claim fails because Plaintiffs do not tie any alleged conduct to any prohibited act taken by Ms. Willing or Ms. Mackie. The tortious interference claim fails to allege HUB-specific inducement acts directed at an identified breach. The unjust enrichment and civil conspiracy counts are duplicative, conclusory, and—to the

1

extent predicated on alleged trade secret misuse—displaced by CUTSA.

Put simply, Ms. Johnson does not have post-employment covenants restricting her freedom to work with and solicit clients for HUB, Ms. Willing and Ms. Mackie cannot be held liable for Ms. Johnson's lawful acts, and HUB has no liability for simply hiring them. Accordingly, the Court should dismiss the claims against Defendants in their entirety.

## II.    LEGAL STANDARD

Dismissal is warranted if a complaint lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019). Plaintiffs may not rely on mere labels or conclusions, and "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Facts alleged must move claims "from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). A complaint devoid of supporting facts cannot survive "on the off chance . . . facts might exist." *Roth v. Wilder*, 420 F. App'x 804, 805 (10th Cir. 2011). Dismissal is also proper when claims fail as a matter of law. *Gee v. Pacheco*, 627 F.3d 1178, 1193–94 (10th Cir. 2010).

## III.    ARGUMENT

### A.    Plaintiffs Fail to Plead a Violation of Colorado or Federal Trade Secret Law Against Ms. Willing and Ms. Mackie (Counts Five and Six).[1]

A trade secrets claim must plausibly allege facts to show (1) a valid trade secret, (2) that was disclosed or used without consent, and (3) a defendant knew or should have known the trade secret was acquired improperly. *DTC Energy Grp., Inc. v. Hirschfeld*, 420

---

[1] Plaintiffs do not allege trade secret claims against HUB. (*See* Compl. ¶¶ 112–28.)

F. Supp. 3d 1163, 1176 (D. Colo. 2019).[2] Here, Plaintiffs fail on all three elements.

### 1. Plaintiffs Fail to Plead Valid Trade Secrets.

To plead a valid trade secret, a complaint must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade." *Sticky.io, Inc. v. Martingale Software, LLC*, 2021 WL 5508429, at *3 (D. Colo. Oct. 27, 2021), *R. & R. adopted,* 2021 WL 5759286 (D. Colo. Dec. 3, 2021). Courts evaluating motions to dismiss trade secret claims consider:

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1108 (10th Cir. 2009). Plaintiffs offer none of these.

Plaintiffs instead list vague categories like "[c]ertain non-public information" about customers, business operations, and employee information based on general descriptions like "customer information," "contact and policy information," and so-called "clients lists" without specificity. (*See* Compl. ¶¶ 4, 25, 32, 51, 73, 113, 115, 117, 123.) Plaintiffs do not identify any particular compilation, field, or data element allegedly acquired, disclosed, or used by Ms. Willing, Ms. Mackie, or HUB. The link to HUB is that

---

[2] Courts review state and federal trade secret claims together. *Satcom Sol. & Res. LLC v. Pope*, 2020 WL 4511773, at *3 (D. Colo. Apr. 20, 2020), *R. & R. adopted*, 2020 WL 2188922 (D. Colo. May 6, 2020).

HUB hired Plaintiffs' former employees; no additional facts are pleaded about HUB's supposed acquisition, disclosure, or use of any trade secret. Plaintiffs' generic allegations thus fall short, and their claims should be dismissed as a result. *See, e.g.*, *Hauschild GmbH & Co. KG v. FlackTek, Inc.*, 2022 WL 392501, at *9–10 (D. Colo. Feb. 9, 2022) (dismissing claim based on "information regarding potential and actual [ ] customers" and "processes and technology"); *Cayo, Inc. v. Swiss Reinsurance Am. Corp.*, 2023 WL 4744196, at *13 (D. Colo. May 2, 2023) (dismissing claim based on "confidential and proprietary intellectual property"); *see also Sticky.io*, 2021 WL 5508429, at *4 (dismissing claim based on "proprietary and superior technology").

Plaintiffs' generic categories also fail for other reasons. For example, "financial condition" and "results of operations," (Compl. ¶ 25b), are not valid trade secrets because Gallagher is a public company that has disclosed this same information for decades, including on its website: https://investor.ajg.com/financials/default.aspx#financial-table (last visited April 24, 2026).[3] *See Johns Manville Corp. v. Knauf Insulation, LLC*, 749 F. App'x 684, 688 n.5 (10th Cir. 2018) ("Information that is public knowledge . . . cannot be a trade secret."). Similarly, Plaintiffs do not plead with any specificity why two other categories of information—related to Plaintiffs' services and employees—warrant trade secret protection. (*See* Compl. ¶¶ 25c–25d.) The Court can disregard those categories entirely. *See Hauschild*, 2022 WL 392501, at *9–10.

---

[3] *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1247 (10th Cir. 2022) (on motion to dismiss, court may consider documents "publicly filed with the Securities and Exchange Commission").

### 2.    Plaintiffs Fail to Plead Facts to Support Misappropriation.

Claims for trade secret misappropriation require more than conjecture and speculation based on "information and belief." *MAGicAll, Inc. v. Advanced Energy Indus., Inc.*, 2018 WL 3619720, at *9 (D. Colo. July 30, 2018). Yet, by way of illustration, Plaintiffs repeatedly rely on "information and belief" along with what they believe "likely" occurred:

- "*Upon information and belief*, the Individual Defendants reached out to one or more clients . . . ." (Compl. ¶ 3) (emphasis added);

- "[I]t is *likely* that [Johnson] moved trade secret documents . . . ." (*id.* ¶ 5; *see also id.* ¶ 52) (emphasis added);

- "*Upon information and belief*, most or all of these customers have moved their business . . . as a direct result of . . . violations of the Agreements and/or use of Gallagher's Trade Secrets" (*id.* ¶ 62) (emphasis added);

- "*Upon information and belief*, [Johnson] retained [a] client's non-public contact information . . . ." (*id.* ¶ 71) (emphasis added);

- "[T]he *likely* contents of the thumb drive . . . are trade secrets . . . ." (*id.* ¶¶ 113, 123) (emphasis added);

- "The Individual Defendants . . . *likely* used the information contained in these files and data by improper means . . . ." (*id.* ¶ 117) (emphasis added); and

- "The Individual Defendants . . . *likely* using Gallagher's Trade Secrets without authorization" (*id.* ¶ 126) (emphasis added).

Such speculation and conclusory allegations cannot state a claim, much less when the only facts pleaded against HUB are that it hired Plaintiffs' former employees. *See MAGicAll*, 2018 WL 3619720, at *9.

Plaintiffs also appear to argue inevitable disclosure because "***there is no way*** that [Johnson] would have the contact and policy information for this vast assemblage of clients without having stolen a customer list." (Compl. ¶ 4 (emphasis added)). But that

5

theory of liability is not recognized. *See Denv. Scrap Metal Recycle Ctr., Inc. v. Adams*, 2025 WL 2815301, at *8 n.6 (D. Colo. June 18, 2025); *see also Northgauge Healthcare Advisors, LLC v. Constellation, Inc.*, 2024 WL 1807952, at *9 (D. Colo. Apr. 25, 2024) (Rodriguez, J.) (stating "mere suspicion and speculation is not enough"). No trade secret claims based on Plaintiffs' musings about inevitable use or disclosure can survive here.

### 3. Plaintiffs Fail to Plead Facts to Support Improper Means.

Plaintiffs fail to plead "improper means" by Defendants. Improper means requires "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage." C.R.S. § 7-74-102(1); 18 U.S.C. § 1839(6). The Complaint says nothing about Ms. Willing or Ms. Mackie taking anything at all. The most Plaintiffs have said—in their injunction briefing—is that Willing printed something before quitting. But mere printing of unspecified things is equally plausible as lawful conduct. *See Moses-El v. City & Cnty. of Denv.*, 2020 WL 859240, at *2 (D. Colo. Feb. 21, 2020) (explaining that allegations allowing for "one possible inference" of liability do not satisfy a plaintiff's pleading requirements), *aff'd*, 2022 WL 1741944 (10th Cir. May 31, 2022). HUB's sin appears to be hiring Plaintiffs' former employees—no additional facts are pleaded about HUB otherwise. And Plaintiffs' own exhibits show the absence of improper means: the communications show client assent and client-initiated outreach, not the deployment of a secret compilation by Ms. Willing or Ms. Mackie. (*See* Compl. Exs. C–F.)

Likewise, Plaintiffs have not pleaded that any Defendant could not obtain client names or contact information from public sources or from their own mobile phones, which constitute independent, lawful derivation that cannot constitute improper means. *See,*

6

*e.g.*, *RV Horizons, Inc. v. Smith*, 2020 WL 6701119, at *23 (D. Colo. Nov. 13, 2020); *see also RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1175 (D. Colo. 2018).

Instead, Plaintiffs again muse that discovery might eventually yield the necessary evidence: "Gallagher is only aware of the tip of the iceberg . . . . It expects that further investigation and discovery will reveal substantially more evidence of unlawful conduct." (Compl. ¶ 81.) But "Rule 12(b)(6) does not allow a plaintiff to file a complaint devoid of supporting facts as a vehicle to commence discovery on the off chance . . . facts might exist which could support a plausible claim." *Roth*, 420 F. App'x at 805. Plaintiffs' Complaint should be dismissed.

### B.     The Contract Claim Against Ms. Willing and Ms. Mackie Fails (Count Three).

Contract claims require facts to support (1) the existence of an enforceable contract, (2) performance by the plaintiff, (3) the defendant's failure to perform, and (4) resulting damages. *McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1144 (10th Cir. 2023). In addition, a plaintiff must plead that the employee's restrictive covenants are not void under Colorado law. *Am. Exp. Fin. Advisors, Inc. v. Topel*, 38 F. Supp. 2d 1233, 1238 (D. Colo. 1999). Here, Plaintiffs failed to allege facts to conclude that Ms. Willing's and Ms. Mackie's restrictive covenants are not void under Colorado law—much less facts to support any breaches of those covenants.

First, Ms. Mackie's restrictive covenant agreement is governed by the law "of the state where [Ms. Mackie] resided at the time of execution." (Compl. Ex. B ¶ 17.) Plaintiffs assert in a footnote that Ms. Mackie resided in Texas. (*Id.* n.2.) Ms. Mackie actually lived

7

in Arizona when she signed the agreement. (Dkt. 30-1, R.App'x 1, Mackie Decl. ¶ 1.)[4] Plaintiffs plead no facts about enforceability under Arizona law. Ms. Willing's restrictive covenant agreement provides that Florida law governs. (Compl. Ex. A ¶ 18.) Plaintiffs plead no facts about enforceability under Florida law. Notably, Ms. Willing's agreement—which Plaintiffs plead was signed in *2014*—references the DTSA statute "of *2016*." (*Compare id.* ¶ 33, *with id.* Ex. A ¶ 2(d) (emphasis added).) Therefore, the document itself defies Plaintiffs' allegations.

Moreover, federal courts sitting in diversity apply Colorado's conflicts-of-law standards. *Wells Fargo Ins. Servs. USA, Inc. v. McQuate*, 276 F. Supp. 3d 1089, 1103 (D. Colo. 2016). Contractual choice of law will not be enforced if "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest." *Id.*; *see also RMSM LTD. v. Indus. Serv. Sols., LLC.*, 2026 WL 878880, at *5 (D. Colo. Mar. 31, 2026) (Rodriguez, J.) (noting application of Colorado law for worker who primarily resided and worked in Colorado at termination). Colorado has the most significant relationship: Plaintiffs are based in Colorado, Ms. Johnson and Ms. Willing live in Colorado, Ms. Mackie supported Johnson's business in Colorado, and the alleged conspiracy is said to affect Plaintiffs in Colorado. (Compl. ¶¶ 18–21, 133–39.) Colorado's non-compete law reflects a fundamental public policy treating non-competes as void unless the enforcing party proves they fit within narrow exceptions. *Great Am. Opportunities, Inc. v. Kent*, 352 F. Supp. 3d 1126, 1133–34 (D. Colo. 2018). Plaintiffs'

---

[4] This should be considered by the Court because it is a jurisdictional issue, and Plaintiffs should not be permitted to proceed based on false information within their own records.

failure to plead that a contractual choice of law should override Colorado law is fatal.

Second, Ms. Willing's and Ms. Mackie's covenants are unenforceable under Colorado law. Under C.R.S. § 8-2-113(2)(a), non-solicitation agreements (which are treated as non-competes)[5] are void unless they meet narrow exceptions that Plaintiffs failed to allege are applicable. For instance, Ms. Willing began working for Plaintiffs in July 2014, and Ms. Mackie in July 2024. (Compl. ¶ 33.) Plaintiffs fail to allege the non-competes were "for the protection of trade secrets" and "no broader than reasonably necessary" as required. *See* C.R.S. § 8–2–113(2)(b), (d). Plaintiffs also fail to plead the relevant earning threshold—for non-solicits, at least 60 percent of the threshold for highly compensated workers—at the time the covenant is entered and enforced. *See id.* In 2025, the threshold was $76,254.60. *See* 7 Colo. Code Regs. § 1103-14 (2025). Plaintiffs allege that Ms. Mackie earned $101,045.84 and Ms. Willing earned $76,084.60 in 2025, meaning Ms. Willing did not meet the threshold. (Compl. ¶ 48.) Plaintiffs conveniently omit what Ms. Mackie earned in 2024 (when Plaintiffs plead she signed) and what either earned in 2026 (when enforcement is sought). The failure is fatal, as are the others.[6]

Third, Plaintiffs' allegations of breach rest on conjecture pleaded on "information and belief." (*See, e.g.,* Compl. ¶¶ 3, 62, 72 (pleading regarding breach of the agreements on "information and belief"); *see also id.* ¶ 98 (referring to the "above-described conduct" as that which "constitutes a breach").) Even the emails referenced in and attached to the

---

[5] *See Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 526 (Colo. App. 2011) ("An agreement not to solicit customers . . . is a form of an agreement not to compete."); *Phoenix Cap., Inc. v. Dowell,* 176 P.3d 835, 844 (Colo. App. 2007) (noting similar proposition).

[6] Another requirement is that a signed notice be provided, otherwise the agreement is void. C.R.S. § 8-2-113(4)(a)–(b). Plaintiffs have failed to plead that notice was provided here.

Complaint do not help Plaintiffs cross the line into plausibility. Plaintiffs cite a pre-resignation email where Ms. Mackie asked if she should quote and refer a policy or obtain a broker-of-record document the next day. (Compl. ¶ 70.) Asking whether to act is not the same as acting and does not show a breach. *See, e.g.*, *Moses-El*, 2020 WL 859240, at *2. The same is true of Plaintiffs' reliance on emails Ms. Johnson sent that referred to Ms. Willing. *See Motherlode Provisions, LLC v. Bouilli, Inc.*, 2017 WL 11547020, at *4–6 (D. Colo. July 24, 2017) (granting motion to dismiss where complaint and its exhibits failed to raise allegations to required level of plausibility). The Complaint offers no facts supporting the claim that Ms. Willing initiated those communications or knew of them.

The Complaint exhibits themselves rebut Plaintiffs' characterization. (*See* Compl. Exs. C–F.) For example, in the "Mona" exchange, the client received an AssuredPartners email and was fine with a broker-of-record change; she asked only that Ms. Willing be "aware of all of this since she was my original contact." (*Id.* Ex. C.) That is a client-initiated request coupled with a prior communication from Plaintiffs—not a prohibited solicitation by anyone. The "Brokerage Change" email is plainly client-initiated: the client proposes a call "when we get back" or asks Ms. Willing to "send me an email regarding the changing of the guard." (*Id.* Ex. E.) And the "Policy Changes" exchange shows a client stating he is "aware that Cindy moved to another agency" and asking "to transfer" his properties insurance agency—again, client-driven, with no allegation that the client is a "Restricted Client" under any restrictive covenant. (*Id.* Ex. F.) Plaintiffs' contract claim fails.

**C.     The Tortious Interference Claim Against HUB Fails (Count Four).**

Plaintiffs' tortious interference claim fails first because it is preempted by CUTSA,

10

which preempts "conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." C.R.S. § 7-74-108(1); *DTC Energy*, 420 F. Supp. 3d at 1183 (claims that are "no more than a restatement of the same operative facts which would plainly and exclusively spell out only trade secret misappropriation" are preempted). Plaintiffs assert that HUB joined a scheme to misappropriate trade secrets. (Compl. ¶ 107.) On that theory, they cannot avoid CUTSA preemption. *See, e.g.*, *Wolf Auto Ctr. Sterling, LLC v. Schadegg*, 2016 WL 10570867, at *3 (D. Colo. Oct. 31, 2016).

Even if not preempted, Count Four fails for multiple other independent reasons. A plaintiff alleging tortious interference must plead that the defendant (1) was aware of the contract, (2) intended that a party breach it, (3) induced the breach or made performance impossible, and (4) acted "improperly." *Hertz*, 576 F.3d at 1118.

First, there can be no claim for tortiously interfering with an unenforceable contract. *See, e.g.*, *Falcon Broadband, Inc. v. Banning Lewis Ranch Metro. Dist. No. 1*, 474 P.3d 1231, 1244 (Colo. App. 2018) (collecting cases stating if contract is void, tortious interference claim necessarily fails). (*See supra* § III.B.)[7]

Second, Plaintiffs claim on "information and belief" that HUB knew of Ms. Willing's and Ms. Mackie's covenants, (Compl. ¶ 106), but the timeline makes that implausible. Ms. Willing and Ms. Mackie resigned on January 27, 2026. (*Id.* ¶ 4.) Plaintiffs notified HUB of the alleged covenants three days later. (*See id.* Ex. G.)

Third, a plaintiff cannot offer only mere speculation, based on information and

---

[7] As the Court knows from prior briefs, HUB asked about the individuals' obligations and took specific actions to prevent violations. (Dkt. 30, HUB TRO/PI Opp'n Brief at 3–5.)

belief, about how a breach was allegedly induced. *See, e.g.*, *Cunningham Lindsey U.S. Inc. v. Crawford & Co.*, 2018 WL 6307865, at *5–7 (D. Colo. Dec. 3, 2018) (unsupported allegations of coordinated resignations pleaded "on information and belief" cannot establish tortious interference without plausibly alleging the defendant's "conduct was illegal, in violation of professional standards, achieved through violence or threats; or arose from misrepresentation, unfounded litigation, or defamation"), *R. & R. adopted*, 2019 WL 120762 (D. Colo. Jan. 7, 2019); *Edwards Lifesciences LLC v. Thompson*, 2026 WL 873953, at *4–5 (D. Colo. Mar. 31, 2026) (Rodriguez, J.) (granting motion to dismiss where plaintiff did not plausibly allege tortious interference).

Here, Plaintiffs' claim that HUB interfered is vague and speculative. Plaintiffs allege only on "information and belief" that HUB instructed engaging in misconduct. Plaintiffs do not identify when or what the supposed instruction actually was, (Compl. ¶ 74), or what actions HUB took to cause a breach, (*id.* ¶¶ 106–08). Vague allegations of interference with customer relationships are insufficient. *Brightspot Sols., LLC v. A+ Prods., Inc.*, 2021 WL 1251512, at *11 (D. Colo. Apr. 5, 2021). Furthermore, Plaintiffs' reference to unrelated Florida litigation against different employees, (Compl. ¶ 75), does not establish knowledge or intent in this case and should be stricken as immaterial and prejudicial under Rule 12(f). It should go without saying that a separate lawsuit in another state involving different individuals does not absolve Plaintiffs of their pleading failures here.

Moreover, Plaintiffs' apparent theory is implausible. It posits that HUB would direct support staff with restrictive covenants rather than go directly to the rainmaker, Ms. Johnson, who has none. Plus, several of the broker-of-record communications on which

Plaintiffs rely predate the alleged knowledge date of January 30. (*Compare* Compl. Exs. C–E, *with id.* Ex. G.) Those communications are client-initiated and cannot support any inference that HUB induced breaches after receiving Plaintiffs' notice days later.

Finally, HUB is entitled to the "competitor's privilege," which permits a competitor to interfere in another's prospective business relations "so long as . . . the competitor does not employ wrongful means" and its "purpose is at least in part to advance its interest in competing." *Energex Enters., Inc. v. Anthony Doors, Inc.*, 250 F. Supp. 2d 1278, 1285 (D. Colo. 2003). There is no allegation of spite or ill will here. The claim should be dismissed.

### D.     The Unjust Enrichment Claim Fails (Count Seven).

This claim is preempted by CUTSA to the extent Plaintiffs' vague invocation of the "misconduct as alleged in this Complaint," (Compl. ¶ 130), means an accusation that Defendants were allegedly enriched by the alleged misappropriation of trade secrets. *See, e.g.*, *zvelo, Inc. v. Akamai Techs., Inc.*, 2019 WL 4751809, at *5–6 (D. Colo. Sept. 30, 2019) (dismissal where unjust enrichment claim based on misappropriation).

Alternatively, Plaintiffs failed to plausibly allege Count Seven. "Under Colorado law, '[a] party claiming unjust enrichment must prove that (1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation.'" *DTC Energy*, 420 F. Supp. 3d at 1178. As to Ms. Willing and Ms. Mackie, their contracts covering the conduct at issue preclude unjust enrichment recovery. *See Titan Mfg. Sols., Inc. v. Nat'l Cost, Inc.*, 2022 WL 22998284, at *12 (D. Colo. Feb. 9, 2022) (Rodriguez, J.). As to HUB, Plaintiffs have failed to plausibly plead any unjust conduct. (*See supra* §§ III.A,

13

III.C.) And as to all three, Plaintiffs offer no non-conclusory allegation of what benefits Defendants supposedly received. *See DTC Energy*, 420 F. Supp. 3d at 1178; *see also Northgauge*, 2024 WL 1807952, at *9 (requiring plaintiff to prove use of, not just access to, trade secrets). Further, the unjust enrichment and contract claims rest on the same nucleus of facts—the alleged diversion of clients—and are duplicative of one another, further warranting dismissal. The claim fails and should be dismissed.

Lastly, as to HUB, employees leaving one job for another is not a circumstance meriting restitution from the hiring employer. Because Plaintiffs have not properly pleaded misconduct by Ms. Willing or Ms. Mackie and no tortious interference by HUB, (*see supra* §§ III.A, III.C), the unjust enrichment claim doubly fails as to HUB.

### E.    The Civil Conspiracy Claim Fails (Count Eight).

To state a claim for civil conspiracy, a plaintiff must plead (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds, (4) an unlawful overt act, and (5) damages. *Lamothe v. Decentral Life, Inc.*, 2024 WL 5055576, at *12 (D. Colo. Oct. 24, 2024), *R. & R. adopted*, 2024 WL 5055579 (D. Colo. Nov. 12, 2024). Here, Count Eight fails for at least four reasons.

First, CUTSA preempts Count Eight because Plaintiffs plead that the object of the alleged conspiracy was to misappropriate trade secrets. *See, e.g.*, *DTC Energy*, 420 F. Supp. 3d at 1182–83 (preemption applies where civil conspiracy claim "depend[s] upon the information in question qualifying as trade secrets").

Second, no underlying tort supports the claim (i.e., there is no overt unlawful act) because the trade secret claim fails. (*See supra* § III.A); *see, e.g.*, *Fine v. Tumpkin*, 330

14

F. Supp. 3d 1246, 1257 (D. Colo. 2018); *see also Am. Muckrakers PAC, Inc. v. Boebert*, 2024 WL 3738932, at \*10 (D. Colo. June 9, 2024) (noting civil conspiracy subject to same defenses as underlying conduct).

Third, Plaintiffs failed to allege facts to support required elements—including agreement, the object of the conspiracy, or anything other than speculation about parallel conduct. Such conclusory allegations that Defendants agreed to "divert Gallagher's clients" using "confidential, proprietary and trade secret information," (Compl. ¶¶ 133–34), fail as a matter of law. *See, e.g.*, *Lamothe*, 2024 WL 5055576, at \*12 ("[T]he Court will not infer an agreement to establish a conspiracy."); *Twombly*, 550 U.S. at 556–57 ("Without more, parallel conduct does not suggest conspiracy.").

\*    \*    \*

In sum, Plaintiffs have filed meritless claims grounded in baseless speculation as part of a campaign against employees who dare to leave. Because former employees like Ms. Johnson do not have restrictive covenants and can compete freely, Plaintiffs have decided to target their former support staff Ms. Willing and Ms. Mackie, along with their new employer, HUB. But it is not the law—state, federal, or otherwise—that jaundiced guesswork about what must be "likely" on "information and belief" according to a scorned former employer gives rise to viable claims. The Federal Rules of Civil Procedure empower this Court to require that complaints contain well-pleaded facts to survive. Consistent with that authority, the Court should grant this Motion to Dismiss.

## IV.    CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Court enter an Order dismissing Plaintiffs' Complaint in its entirety with prejudice.

15

Dated: April 24, 2026

Respectfully submitted,

*/s/ Christopher J. Dawes*
Christopher J. Dawes, Atty. No. 33818
FOX ROTHSCHILD LLP
1225 17th Street, Suite 2200
Denver, CO 80202
(303) 292-1200
cdawes@foxrothschild.com

Martin R. Martos II, Atty. No. 6303908 (IL)
FOX ROTHSCHILD LLP
321 North Clark Street, Suite 1600
Chicago, IL 60654
(312) 517-9200
mmartos@foxrothschild.com

Elizabeth A. Patton, Atty. No. 0391431 (MN)
FOX ROTHSCHILD LLP
33 South 6th Street, Suite 3600
Minneapolis, MN 55402
(612) 607-7000
epatton@foxrothschild.com

*Counsel for Defendants HUB International Limited,
Amanda Mackie, and Vicki Willing*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the parties met and conferred pursuant to the Local Rules and

the Court's Practice Standards but were unable to reach resolution on the issues raised

in the foregoing **MOTION TO DISMISS COMPLAINT**.

*/s/ Christopher J. Dawes*

16

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2026, the foregoing **MOTION TO DISMISS COMPLAINT** was filed with the Court and served via CM/ECF on all counsel of record.

*/s/ Rochelle Gomez*

17