**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

ARTHUR J. GALLAGHER & CO. and
ASSUREDPARTNERS OF COLORADO,
LLC,

                Plaintiffs,

v.

CINDY ACKERMAN JOHNSON,
VICKI WILLING, AMANDA MACKIE,
and HUB INTERNATIONAL LIMITED,

                Defendants.

Case No. 1:26-cv-00539-RMR-SBP

**DEFENDANTS HUB INTERNATIONAL LIMITED, VICKI WILLING,
AND AMANDA MACKIE'S MOTION TO DISMISS AMENDED COMPLAINT**

Defendants Vicki Willing, Amanda Mackie, and HUB International Limited ("HUB") (together, "Defendants") file this Motion to Dismiss Amended Complaint (Dkt. 49), with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6) and state as follows.

## I.    INTRODUCTION

Still upset that a major insurance producer, Cindy Johnson, chose to switch jobs in January 2026 and is not subject to any restrictive covenants, Plaintiffs filed a baseless complaint, and have now amended that complaint, against Ms. Johnson but also Ms. Willing, Ms. Mackie, and HUB. To be blunt: Plaintiffs are still not motivated by legal rights but by hope that they can create restrictive covenant obligations where none exist.

Unsurprisingly, Plaintiffs' Amended Complaint continues to rest on conjecture and speculation, not well-pleaded facts. (*See, e.g.,* Am. Compl. ¶¶ 3, 5, 6 n.1, 10, 71, 72, 73, 74, 76, 82, 91, 92, 94, 95, 105, 124, 130.) Plaintiffs ask the Court to infer misappropriation and breach, while conceding that they "will not know the full contents" until after discovery and that "discovery will reveal" more evidence. (*Id.* ¶¶ 71, 115, 120.) Yet the exhibits attached to the Amended Complaint show no prohibited solicitation or servicing by Ms. Willing or Ms. Mackie and no HUB-directed inducement or participation. (*Id.* Exs. C–F.) The other communications cited are intentionally withheld from Defendants.

Despite amending in the face of Defendants' original motion to dismiss, Plaintiffs' claims still fail. Among other reasons: The trade secret claims fail for lack of specificity and plausibility. The contract claim fails because Plaintiffs do not tie any alleged conduct to any prohibited act taken by Ms. Willing or Ms. Mackie. The tortious interference and deceptive trade practices claims fail to allege HUB-specific acts. The unjust enrichment

1

and civil conspiracy counts are duplicative, conclusory, and—to the extent predicated on alleged trade secret misuse—displaced by Colorado's trade secret statute ("CUTSA").

Put simply, Ms. Johnson does not have post-employment covenants restricting her freedom to work with and solicit clients for HUB; Ms. Willing and Ms. Mackie cannot be held liable for Ms. Johnson's lawful acts; and HUB has no liability for simply hiring them. Accordingly, the Court should dismiss the claims against Defendants in their entirety.

## II.     LEGAL STANDARD

Dismissal is warranted if a complaint lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019). Plaintiffs may not rely on mere labels or conclusions, and "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Facts alleged must move claims "from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). A complaint devoid of supporting facts cannot survive "on the off chance . . . facts might exist." *Roth v. Wilder*, 420 F. App'x 804, 805 (10th Cir. 2011). Dismissal is also proper when claims fail as a matter of law. *Gee v. Pacheco*, 627 F.3d 1178, 1193–94 (10th Cir. 2010).

## III.    ARGUMENT

### A.      Plaintiffs Fail to Plead a Violation of Colorado or Federal Trade Secret Law (Counts Five and Six).

A trade secrets claim must plausibly allege facts to show (1) a valid trade secret, (2) that was disclosed or used without consent, and (3) a defendant knew or should have known the trade secret was acquired improperly. *DTC Energy Grp., Inc. v. Hirschfeld*, 420

F. Supp. 3d 1163, 1176 (D. Colo. 2019).[1] Here, Plaintiffs fail on all three elements.

### 1.     Plaintiffs Fail to Plead Valid Trade Secrets.

To plead a valid trade secret, a complaint must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade." *Sticky.io, Inc. v. Martingale Software, LLC*, 2021 WL 5508429, at *3 (D. Colo. Oct. 27, 2021), *R. & R. adopted,* 2021 WL 5759286 (D. Colo. Dec. 3, 2021). Courts evaluating motions to dismiss trade secret claims consider a number of issues that Plaintiff fail to sufficiently allege here. *See Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1108 (10th Cir. 2009).

Notably, despite Defendants' prior motion to dismiss, Plaintiffs continue to rely on vague categories like "[c]ertain non-public information" about customers, business operations, and employee information based on general descriptions like "client information," "contact and policy information," and so-called "clients lists" without specificity. (*See* Am. Compl. ¶¶ 4, 7, 31, 41, 61, 93, 152, 155, 157, 165.) Plaintiffs do not identify any particular item allegedly acquired, disclosed, or used by any defendant. The link to HUB is that it hired Plaintiffs' former employees; no new facts are pleaded about HUB's supposed acquisition, disclosure, or use of any trade secret. Plaintiffs' generic allegations thus fall short, and their claims should be dismissed. *See, e.g.*, *Hauschild GmbH & Co. KG v. FlackTek, Inc.*, 2022 WL 392501, at *9–10 (D. Colo. Feb. 9, 2022) (dismissing claim based on general "information regarding potential and actual []

---

[1] Courts review state and federal trade secret claims together. *Satcom Sol. & Res. LLC v. Pope*, 2020 WL 4511773, at *3 (D. Colo. Apr. 20, 2020), *R. & R. adopted*, 2020 WL 2188922 (D. Colo. May 6, 2020).

customers" and "processes and technology"); *Cayo, Inc. v. Swiss Reinsurance Am. Corp.*, 2023 WL 4744196, at *13 (D. Colo. May 2, 2023) (dismissing claim based on general "confidential and proprietary intellectual property"); *see also Sticky.io*, 2021 WL 5508429, at *4 (dismissing claim based on general "proprietary and superior technology").

Plaintiffs' generic categories also fail for other reasons. For example, "financial condition" and "results of operations," (Am. Compl. ¶ 31b), are not valid trade secrets because Gallagher is a public company that has disclosed this same information for decades, including on its website: https://investor.ajg.com/financials/default.aspx#financial-table (last visited May 18, 2026).[2] *See Johns Manville Corp. v. Knauf Insulation, LLC*, 749 F. App'x 684, 688 n.5 (10th Cir. 2018) ("Information that is public knowledge . . . cannot be a trade secret."). Similarly, Plaintiffs do not plead with any specificity why two other categories of information—related to Plaintiffs' services and employees—warrant trade secret protection. (*See* Am. Compl. ¶¶ 31c–31d.) The Court can disregard those categories entirely. *See Hauschild*, 2022 WL 392501, at *9–10.

### 2. Plaintiffs Fail to Plead Facts to Support Misappropriation.

Claims for trade secret misappropriation require more than conjecture and speculation based on "information and belief." *MAGicAll, Inc. v. Advanced Energy Indus., Inc.*, 2018 WL 3619720, at *9 (D. Colo. July 30, 2018). Yet, by way of illustration, Plaintiffs continue to rely on "information and belief" along with what they believe "likely"[3] occurred:

---

[2] *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1247 (10th Cir. 2022) (court may consider documents "publicly filed with the Securities and Exchange Commission").

[3] Notably, Plaintiffs removed the word "likely" and "believes" from numerous allegations in their Amended Complaint, without pleading any new underlying facts. (*Compare* Compl. ¶¶ 5, 52, 60, 116, 126, & Section V, *with* Am. Compl. ¶¶ 5, 71, 80, 157, 173, &

- "*Upon information and belief*, the Individual Defendants reached out to one or more clients . . . ." (Am. Compl. ¶ 3 (emphasis added); *see also id.* ¶¶ 73, 91, 92.)

- "The flash drive *likely* contains additional Gallagher Trade Secrets . . . ." (*Id.* ¶ 6 n.1 (emphasis added).)

- "*Upon information and belief*, most or all of these clients have moved their business . . . as a direct result of . . . violations of the Agreements and/or use of Gallagher's Trade Secrets" (*Id.* ¶ 82 (emphasis added).)

- "*On information and belief*, [Johnson] also stored large volumes of Gallagher Trade Secrets and Confidential Information in her personal cell phone . . . ." (*Id.* ¶ 94.)

- "*On information and belief*, the Individual Defendants have taken this course of action at the instruction of HUB . . . ." (*Id.* ¶ 95.)

Such speculation and conclusory allegations cannot state a claim, much less when the only facts pleaded against HUB are that it hired Plaintiffs' former employees.[4] *See MAGicAll*, 2018 WL 3619720, at *9. From experience, Plaintiffs know that more is required. *See AssuredPartners of Oregon, LLC v. Reese*, No. 6:22-CV-00673-MC, 2022 WL 18024957, at *3 (D. Or. Dec. 30, 2022) (dismissing Plaintiffs' trade secret claim as to certain defendants for failure to allege separate facts as to each defendant).

Plaintiffs also still argue inevitable disclosure because "**there is no way** that [Johnson] would have the contact and policy information for this vast assemblage of

---

Section V.) This reveals that Plaintiffs are simply relying on speculation and conjecture, which is insufficient to survive a motion to dismiss. *See Frey v. Town of Jackson*, 41 F.4th 1223, 1233 (10th Cir. 2022) ("An allegation is conclusory if it states an inference without underlying facts or if it lacks any factual enhancement.").

[4] Acknowledging that they have no facts that HUB engaged in misappropriation, Plaintiffs' original complaint did not assert a trade secret claim against HUB. (*See* Compl. at Counts Five, Six.) Now Plaintiffs do, but with no new additional facts about HUB. (*Compare id., with* Am. Compl. at Counts Five, Six.) Plaintiffs merely add an allegation that Johnson and Willing "acted as agents" of HUB and that HUB must have known about Johnson's actions and therefore "endorsed and validated" them. (Am. Compl. ¶¶ 159–60, 171–72.)

5

clients without having stolen a customer list." (Am. Compl. ¶ 4 (emphasis added).) But that theory of liability is not recognized. *See Denv. Scrap Metal Recycle Ctr., Inc. v. Adams*, 2025 WL 2815301, at *8 n.6 (D. Colo. June 18, 2025); *see also Northgauge Healthcare Advisors, LLC v. Constellation, Inc.*, 2024 WL 1807952, at *9 (D. Colo. Apr. 25, 2024) (Rodriguez, J.) (stating "mere suspicion and speculation is not enough"). No trade secret claims based on Plaintiffs' musings about inevitable disclosure can survive.

### 3.     Plaintiffs Fail to Plead Facts to Support Improper Means.

Plaintiffs still fail to plead "improper means" by Defendants. Improper means requires "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage." C.R.S. § 7-74-102(1); 18 U.S.C. § 1839(6). The most Plaintiffs have said is that Willing printed something before quitting. (Am. Compl. ¶ 72.) But mere printing of unspecified things is equally plausible as lawful conduct. *See Moses-El v. City & Cnty. of Denv.*, 2020 WL 859240, at *2 (D. Colo. Feb. 21, 2020) (explaining that allegations allowing for "one possible inference" of liability do not satisfy a plaintiff's pleading requirements), *aff'd*, 2022 WL 1741944 (10th Cir. May 31, 2022). HUB's sin appears to be hiring Plaintiffs' former employees—again, no additional facts are pleaded otherwise. And Plaintiffs' own exhibits show the absence of improper means: the communications show client assent and client-initiated outreach, not the deployment of a secret compilation by any defendant. (*See* Am. Compl. Exs. C–F.)

Likewise, Plaintiffs have not pleaded that any Defendant could not obtain client names or contact information from public sources or from their own mobile phones, which constitute independent, lawful derivation that cannot constitute improper means. *See,*

*e.g.*, *RV Horizons, Inc. v. Smith*, 2020 WL 6701119, at *23 (D. Colo. Nov. 13, 2020); *see also RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1175 (D. Colo. 2018). Instead, Plaintiffs again muse that discovery might eventually yield the necessary evidence: "Gallagher is only aware of the tip of the iceberg . . . . It expects that further investigation and discovery will reveal substantially more evidence of unlawful conduct." (Compl. ¶ 81.) But "Rule 12(b)(6) does not allow a plaintiff to file a complaint devoid of supporting facts as a vehicle to commence discovery on the off chance . . . facts might exist which could support a plausible claim." *Roth*, 420 F. App'x at 805. Plaintiffs' Amended Complaint should be dismissed.

### B.     Plaintiffs' Contract Claim Fails (Count Three).

Contract claims require facts to support (1) the existence of an enforceable contract, (2) performance by the plaintiff, (3) the defendant's failure to perform, and (4) resulting damages. *McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1144 (10th Cir. 2023). In addition, a plaintiff must plead that the employee's restrictive covenants are not void under Colorado law. *Am. Exp. Fin. Advisors, Inc. v. Topel*, 38 F. Supp. 2d 1233, 1238 (D. Colo. 1999). Here, Plaintiffs still fail to allege facts to conclude that Ms. Willing's and Ms. Mackie's restrictive covenants are not void under Colorado law—much less facts to support any breaches of those covenants.

First, Ms. Mackie's restrictive covenant agreement is governed by the law "of the state where [she] resided at the time of execution." (Am. Compl. Ex. B ¶ 17.) Although Plaintiffs originally asserted that Ms. Mackie resided in Texas at the time she signed the agreement, Plaintiffs changed that allegation in their Amended Complaint. (*See id.* ¶ 42

7

n.3.) Plaintiffs plead no facts about enforceability under Arizona law. Ms. Willing's restrictive covenant agreement provides that Florida law governs. (Am. Compl. Ex. A ¶ 18.) Plaintiffs plead no facts about enforceability under Florida law, despite Defendants' prior motion to dismiss on this issue. Rather than repeat prior arguments, Defendants incorporate by reference their prior arguments regarding Colorado choice-of-law, *mutatis mutandis*, which still apply and entitle them to the relief they seek. (*See* Dkt. 41 at 8–9.)

Second, Plaintiffs' allegations of breach still rest on "information and belief" conjecture. (*See, e.g.,* Am. Compl. ¶¶ 3, 82, 92 (pleading breach of the agreements on "information and belief"); *see also id.* ¶ 137 (referring to the "above-described conduct" as that which "constitutes a breach").) This is all the more troubling because Plaintiffs ignore the declarations in the record that attest to the lack of any improper solicitation.[5] (*See* Dkt. 30-1, App'x at 1–49.) Even the emails referenced in and attached to the Amended Complaint do not help show plausibility. Plaintiffs cite a pre-resignation email where Ms. Mackie asked if she should quote and refer a policy or obtain a broker-of-record document the next day. (Am. Compl. ¶ 90.) Asking whether to act is not the same as acting and does not show a breach. *See, e.g.*, *Moses-El*, 2020 WL 859240, at *2. The same is true of Plaintiffs' reliance on emails Ms. Johnson sent that referred to Ms. Willing. *See Motherlode Provisions, LLC v. Bouilli, Inc.*, 2017 WL 11547020, at *4–6 (D. Colo. July 24, 2017) (granting motion to dismiss where complaint and its exhibits failed to raise allegations to required level of plausibility). The Amended Complaint offers no facts

---

[5] *See Schrag v. Dinges*, 73 F.3d 374, at *14 (Table) (10th Cir. 1995) (noting issue with "complaint that contained allegations . . . counsel had previously been told were false").

supporting the claim that Ms. Willing initiated those communications or knew of them.

The Amended Complaint exhibits themselves rebut Plaintiffs' characterization. (*See* Am. Compl. Exs. C–F.) For example, in the "Mona" exchange, the client received an AssuredPartners email and was fine with a broker-of-record change; she asked only that Ms. Willing be "aware of all of this since she was my original contact." (*Id.* Ex. C.) That is a client-initiated request coupled with a prior communication from Plaintiffs—not a prohibited solicitation by anyone. Plus, Plaintiffs filed their Amended Complaint despite being aware that Mona Milton's declaration, (Dkt. 40-2), does not support the allegations (*see supra* n.5). The "Brokerage Change" email is plainly client-initiated: the client proposes a call "when we get back" or asks Ms. Willing to "send me an email regarding the changing of the guard." (*Id.* Ex. E.) And the "Policy Changes" exchange shows a client stating he is "aware that Cindy moved to another agency" and asking "to transfer" his properties insurance agency—again, client-driven, with no allegation that the client is a "Restricted Client" under any restrictive covenant. (*Id.* Ex. F.) The other emails referenced in the Amended Complaint are intentionally withheld, which is telling (Plaintiffs do not want them seen) and improper. Plaintiffs' contract claim fails.

## C.    Plaintiffs' Tortious Interference Claim Fails (Count Four).

Plaintiffs' tortious interference claim still fails because it is preempted by CUTSA, which preempts "conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." C.R.S. § 7-74-108(1); *DTC Energy*, 420 F. Supp. 3d at 1183 (claims that are "no more than a restatement of the same operative facts which would plainly and exclusively spell out only trade secret misappropriation" are

9

preempted). Plaintiffs assert that HUB joined a "scheme" to misappropriate trade secrets. (Compl. ¶ 146.) On that theory, they cannot avoid CUTSA preemption. *See, e.g., Wolf Auto Ctr. Sterling, LLC v. Schadegg*, 2016 WL 10570867, at *3 (D. Colo. Oct. 31, 2016). But even if not preempted, Count Four fails for multiple other independent reasons. A plaintiff alleging tortious interference must plead that the defendant (1) was aware of the contract, (2) intended that a party breach it, (3) induced the breach or made performance impossible, and (4) acted "improperly." *Hertz*, 576 F.3d at 1118.

First, there can be no claim for tortiously interfering with an unenforceable contract. *See, e.g.*, *Falcon Broadband, Inc. v. Banning Lewis Ranch Metro. Dist. No. 1*, 474 P.3d 1231, 1244 (Colo. App. 2018) (collecting cases stating if contract is void, tortious interference claim necessarily fails). (*See supra* § III.B.)[6] Second, Plaintiffs claim with no factual basis whatsoever (previously pled on "information and belief") that HUB knew of Ms. Willing's and Ms. Mackie's covenants, (Am. Compl. ¶ 145), but the timeline makes that implausible. Ms. Willing and Ms. Mackie resigned on January 27, 2026. (*Id.* ¶ 4.) Plaintiffs notified HUB of the alleged covenants three days later. (*See id.* Ex. G.) Plaintiffs' conclusory allegations are insufficient. Third, a plaintiff cannot offer only mere speculation, based on information and belief, about how a breach was allegedly induced. *See, e.g.*, *Cunningham Lindsey U.S. Inc. v. Crawford & Co.*, 2018 WL 6307865, at *5–7 (D. Colo. Dec. 3, 2018) (unsupported allegations of coordinated resignations pleaded "on information and belief" cannot establish tortious interference without plausibly alleging the

---

[6] As the Court knows from prior briefs, HUB asked about the individuals' obligations and took specific actions to prevent violations. (Dkt. 30, HUB TRO/PI Opp'n Brief at 3–5.)

defendant's "conduct was illegal, in violation of professional standards, achieved through violence or threats; or arose from misrepresentation, unfounded litigation, or defamation"), *R. & R. adopted*, 2019 WL 120762 (D. Colo. Jan. 7, 2019); *Edwards Lifesciences LLC v. Thompson*, 2026 WL 873953, at *4–5 (D. Colo. Mar. 31, 2026) (Rodriguez, J.) (granting motion to dismiss where plaintiff did not plausibly allege tortious interference).

Here, Plaintiffs' claim that HUB interfered continues to be vague and speculative. Plaintiffs allege only on "information and belief" that HUB instructed engaging in misconduct. Plaintiffs do not identify when or what the supposed instruction actually was, (Am. Compl. ¶ 95), or what actions HUB took to cause a breach, (*id.* ¶¶ 145–47). Vague allegations of interference with customer relationships are insufficient. *Brightspot Sols., LLC v. A+ Prods., Inc.*, 2021 WL 1251512, at *11 (D. Colo. Apr. 5, 2021). Furthermore, Plaintiffs' reference to unrelated litigation, (Am. Compl. ¶ 97), does not establish knowledge or intent in this case and should be stricken as immaterial and prejudicial under Rule 12(f). It should go without saying that a separate lawsuit in another state involving different individuals does not absolve Plaintiffs of their pleading failures here.

Moreover, Plaintiffs' apparent theory is implausible. It posits that HUB would direct support staff with restrictive covenants rather than go directly to the rainmaker, *i.e.*, Ms. Johnson, who has none. Plus, several of the broker-of-record communications on which Plaintiffs rely predate the alleged knowledge date of January 30. (*Compare* Am. Compl. Exs. C–E, *with id.* Ex. G.) Those communications are client-initiated and cannot support any inference that HUB induced breaches after receiving Plaintiffs' notice days later.

Finally, HUB is entitled to the "competitor's privilege," which permits a competitor to interfere in another's prospective business relations "so long as . . . the competitor does not employ wrongful means" and its "purpose is at least in part to advance its interest in competing." *Energex Enters., Inc. v. Anthony Doors, Inc.*, 250 F. Supp. 2d 1278, 1285 (D. Colo. 2003). There is no allegation of spite or ill will here. The claim should be dismissed.

### D.    Plaintiffs' Deceptive Trade Practices Claim Fails (Count Seven).

It appears Plaintiffs are proceeding under the Colorado Consumer Protection Act that prohibits "[d]isparag[ing] the goods, services, property, or business of another by false or misleading representation of fact." C.R.S. § 6-1-105(1)(h). (*See* Am. Compl. ¶ 181.) Plaintiffs' claim fails for multiple reasons. First, any statements about whether Plaintiffs were a "good fit," (Am. Comp. ¶¶ 84–85), are not disparaging and are instead proper opinion/puffery. *See Renfro v. Champion Petfoods USA, Inc*., 25 F.4th 1293, 1302 (10th Cir. 2022) (holding that statements of opinion are puffery, not specific representations of fact that can form the basis of a deceptive trade practices claim). Second, Plaintiffs know that any statements about their operations in India, (Am. Compl. ¶ 178), are ***true***,[7] so the alleged falsity of the statements cannot be used as a basis for a

---

[7] As Plaintiffs themselves disclose publicly, they have "substantial operations in India that provide important client support and other services." *See* https://s28.q4cdn.com/872121257/files/doc_financials/2025/ar/2025-Annual-Report-1.pdf (2025 Annual Report to the SEC describing operations in India); https://www.prnewswire.com/news-releases/arthur-j-gallagher--co-closes-acquisition-of-assuredpartners-302532200.html (press release describing "off-shore centers of excellence . . . operate[d] in India"); https://s28.q4cdn.com/872121257/files/doc_events/2024/Dec/09/2024-12-09-Investor-Presentation_vFinal.pdf (investor presentation stating, as a result of the acquisition of AssuredPartners, there would be "synergies . . . related to efficiencies available by utilizing the Gallagher Center of Excellence," located in India);

legal claim. *See Schrag*, 73 F.3d at *14. Third, any statements about how customers will be serviced at HUB, (Am. Compl. ¶ 179), does not constitute disparagement of ***Plaintiffs'*** services, which the statute requires. C.R.S. § 6-1-105(1)(h) (requiring disparagement "of another"). Fourth, as to all alleged statements, Plaintiffs fail to allege any significant impact to the public. *See Oaster v. Robertson*, 173 F. Supp. 3d 1150, 1175–76 & n.13 (D. Colo. 2016) (listing elements of claim, including that the defendant's deceptive trade practice significantly impact the public).

Lastly, as to HUB specifically, Plaintiffs' claim further fails because they have only alleged in conclusory fashion that "HUB has approved, either explicitly or implicitly, this campaign of false statements." (Am. Compl. ¶ 184.) Plaintiffs plead no fact supporting an inference that HUB knew of, let alone approved, this alleged "campaign." Just saying something is so does not make it so. This claim should be dismissed for these fatal flaws.

### E. Plaintiffs' Unjust Enrichment Claim Fails (Count Eight).

This claim is preempted by CUTSA to the extent Plaintiffs' vague invocation of the "misconduct as alleged in this Complaint," (Am. Compl. ¶ 187), means an accusation that Defendants were allegedly enriched by the alleged misappropriation of trade secrets. *See, e.g.*, *zvelo, Inc. v. Akamai Techs., Inc.*, 2019 WL 4751809, at *5–6 (D. Colo. Sept. 30, 2019) (dismissal where unjust enrichment claim based on misappropriation).

Alternatively, Plaintiffs did nothing to amend their failure to plausibly allege Count Seven. "Under Colorado law, '[a] party claiming unjust enrichment must prove that (1) the

---

https://www.ajg.com/in/about-us/gallagher-center-of-excellence/ (website describing 10,000 professionals at Gallagher Center of Excellence in India) (all websites last visited May 18, 2026).

13

defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation.'" *DTC Energy*, 420 F. Supp. 3d at 1178. As to Ms. Willing and Ms. Mackie, their contracts covering the conduct at issue preclude unjust enrichment recovery. *See Titan Mfg. Sols., Inc. v. Nat'l Cost, Inc.*, 2022 WL 22998284, at *12 (D. Colo. Feb. 9, 2022) (Rodriguez, J.). As to HUB, Plaintiffs have failed to plausibly plead any unjust conduct. (*See supra* §§ III.A, III.C.) As to all three, Plaintiffs offer no non-conclusory allegation of what benefits Defendants supposedly received. *See DTC Energy*, 420 F. Supp. 3d at 1178; *see also Northgauge*, 2024 WL 1807952, at *9 (requiring plaintiff to prove use of, not just access to, trade secrets). Further, the unjust enrichment and contract claims rest on the same nucleus of facts—the alleged diversion of clients—and are duplicative of one another, further warranting dismissal. Lastly, as to HUB, employees leaving one job for another is not a circumstance meriting restitution. Because Plaintiffs have not properly pleaded misconduct by Ms. Willing or Ms. Mackie and no tortious interference by HUB, (*see supra* §§ III.A, III.C), the unjust enrichment claim doubly fails as to HUB.

### F.    Plaintiffs' Civil Conspiracy Claim Fails (Count Nine).

To state a claim for civil conspiracy, a plaintiff must plead (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds, (4) an unlawful overt act, and (5) damages. *Lamothe v. Decentral Life, Inc.*, 2024 WL 5055576, at *12 (D. Colo. Oct. 24, 2024), *R. & R. adopted*, 2024 WL 5055579 (D. Colo. Nov. 12, 2024). Here, Count Eight fails for at least four reasons.

First, CUTSA preempts Count Eight because Plaintiffs plead that the object of the

14

alleged conspiracy was to misappropriate trade secrets. *See, e.g.*, *DTC Energy*, 420 F. Supp. 3d at 1182–83 (preemption applies where civil conspiracy claim "depend[s] upon the information in question qualifying as trade secrets"). Second, Plaintiffs did nothing to amend their claim to identify an underlying tort supporting the claim—because the trade secret claim fails. (*See supra* § III.A); *see, e.g.*, *Fine v. Tumpkin*, 330 F. Supp. 3d 1246, 1257 (D. Colo. 2018); *see also Am. Muckrakers PAC, Inc. v. Boebert*, 2024 WL 3738932, at *10 (D. Colo. June 9, 2024) (noting civil conspiracy subject to same defenses as underlying conduct). Third, Plaintiffs still fail to allege facts to support required elements—including agreement, the object of the conspiracy, or anything other than speculation about parallel conduct. Such conclusory allegations that Defendants agreed to "divert Gallagher's clients" using "confidential, proprietary and trade secret information," (Am. Compl. ¶¶ 190–91), fail as a matter of law. *See, e.g.*, *Lamothe*, 2024 WL 5055576, at *12 ("[T]he Court will not infer an agreement to establish a conspiracy."); *Twombly*, 550 U.S. at 556–57 ("Without more, parallel conduct does not suggest conspiracy.").

\*    \*    \*

In sum, Plaintiffs have continued with their meritless claims grounded in baseless speculation as part of a campaign against employees, whether they have restrictive covenants or not, who dare to leave for a competitor. Plaintiffs cannot survive a motion to dismiss based on conclusory and speculative allegations, including those that Plaintiffs know to be false based on their own public statements and declarations in the record.

## IV.    CONCLUSION

WHEREFORE, Defendants respectfully request that this Court enter an Order dismissing Plaintiffs' Amended Complaint in its entirety with prejudice.

Dated: May 18, 2026                    Respectfully submitted,

                                       */s/ Christopher J. Dawes*
                                       Christopher J. Dawes, Atty. No. 33818
                                       FOX ROTHSCHILD LLP
                                       1225 17th Street, Suite 2200
                                       Denver, CO 80202
                                       (303) 292-1200
                                       cdawes@foxrothschild.com

                                       Martin R. Martos II, Atty. No. 6303908 (IL)
                                       FOX ROTHSCHILD LLP
                                       321 North Clark Street, Suite 1600
                                       Chicago, IL 60654
                                       (312) 517-9200
                                       mmartos@foxrothschild.com

                                       Elizabeth A. Patton, Atty. No. 0391431 (MN)
                                       FOX ROTHSCHILD LLP
                                       33 South 6th Street, Suite 3600
                                       Minneapolis, MN 55402
                                       (612) 607-7000
                                       epatton@foxrothschild.com

                                       *Counsel for Defendants HUB International Limited,
                                       Amanda Mackie, and Vicki Willing*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the parties met and conferred pursuant to the Local Rules and the Court's Practice Standards but were unable to reach resolution on the issues raised in the foregoing **MOTION TO DISMISS AMENDED COMPLAINT**.

                                       */s/ Martin R. Martos*

16

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2026, the foregoing **MOTION TO DISMISS AMENDED COMPLAINT** was filed with the Court and served via CM/ECF on all counsel of record.

*/s/ Jenn Bartelson*